UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY,  )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>BOATRIGHT RAILROAD PRODUCTS, INC, et al.,  )<br>)<br>Defendants.  ) | Civil Action Number<br>**2:17-cv-01787-AKK** |

## MEMORANDUM OPINION AND ORDER

Norfolk Southern Railway Company asserts claims against multiple corporate and individual defendants[1] arising from an alleged scheme involving the sale of improperly and fraudulently treated railway ties. The court previously dismissed the RICO, negligence, and fraudulent misrepresentation claims against the Boatright Defendants. This action is presently before the court on Norfolk Southern's motion for reconsideration and for leave to amend, doc. 70, and Jimmy Watt's motion for judgment on the pleadings, doc. 52, and motion to strike, doc.

---

[1] The corporate defendants are Boatright Railroad Products, Inc. and Boatright Railroad Products, LLC. Norfolk Southern's amended complaint individually names Rush Shane Boatright, the owner and CEO of the two corporate entities; and John Steven Bookout, the entities' corporate secretary. The court refers to the corporate entities, Mr. Boatright, and Mr. Bookout collectively as the "Boatright Defendants." The remaining individual defendant is Jimmy Watt, a railroad tie inspector consulting for Norfolk Southern.

66. The motions are fully briefed and ripe for review. *See* Docs. 52; 60; 64; 65; 66; 69; 70; 73; and 75. After careful consideration, and for the reasons explained below, Norfolk Southern's motion to reconsider and for leave to amend is due to be granted in part. Specifically, Norfolk Southern may file an amended complaint to plead a RICO claim against John Bookout and Shane Boatright. Watt's motion judgment on the pleadings and his motion to strike are due to be denied.

**I.    STANDARD OF REVIEW**

The court has discretion to reconsider any order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . ." *See* Fed. R. Civ. P. 54(b); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (reviewing the denial of a motion to reconsider only for abuse of discretion). Although the court's "power to reconsider, revise, alter, or amend [an] interlocutory order is not subject to the limitations of Rule 59," *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) (quotation omitted), "[i]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly," *Gougler v. Sirius Prods., Inc.*, 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005). Generally, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability or

2

new evidence, or the need to correct clear error or manifest injustice." *Summit Med. Ctr. Of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003).

Next, courts generally "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "a motion to amend may be denied on 'numerous grounds, such as undue delay, undue prejudice to the defendants, and futility of the amendment." *Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) (quoting *Maynard v. Bd. of Regents of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1287 (11th Cir. 2003)).

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

Norfolk Southern owns and operates an extensive interstate rail network. Doc. 32 at 1-2. To maintain this network, Norfolk Southern purchased railroad ties from the Boatright entities, and it required Boatright to specially prepare and treat the ties in order to prevent premature degradation. *Id.* at 4-5. Allegedly, Messrs. Bookout and Boatright instructed Boatright's employees to stop treating railroad ties according to Norfolk Southern's specifications, and instead to use cheap substances to make the railroad ties black without considering whether these substances impacted the preservation of the ties. *Id.* at 5-6. Norfolk Southern contends that Boatright enlisted Stephens Oil Company, Inc. to obtain "inexpensive petroleum products, such as asphalt flux and LUWA (typically used

---

[2] The court adopts and incorporates by reference the facts set forth in its prior Memorandum Opinion and Order. *See* doc. 51 at 7-10.

for road paving), on Boatright's behalf and at Boatright's direction to further the 'make it black' scheme." Doc. 64-3 at 7. Allegedly, Stephens Oil's participation allowed Boatright "to purchase large volumes of petroleum-based products, which have no legitimate role in tie treatment, without detection or significant suspicion." *Id.* at 8. Stephens Oil then enlisted Avista Oil Refining and Trading to formulate a new chemical compound called AFDO-50 for Boatright's use in the "make it black" scheme. *Id.* Neither Boatright nor Stephens Oil investigated whether asphalt flux, LUWA, or AFDO-50 was a wood preservative. *Id.* The scheme allegedly lasted from 2009 until 2014. *See* doc. 32 at 7, 14.

Former Boatright employees subsequently informed Norfolk Southern about the scheme. *Id.* at 14. Thereafter, Norfolk Southern confirmed that ties purchased from Boatright were not treated according to its specifications and were degrading more quickly than anticipated. *Id.* Norfolk Southern then commenced this action, asserting both substantive RICO and RICO conspiracy claims against the Boatright Defendants and Watt, and state law claims for breach of contract, negligence, fraud, and civil conspiracy. Doc. 32. The Boatright Defendants moved to dismiss all the claims, with the exception of the breach of contract claim asserted against the Boatright entities, docs. 35 and 37, and the court granted the motions in part, dismissing the RICO, negligence, and fraudulent misrepresentation claims, doc. 51.

4

## III. DISCUSSION

Norfolk Southern asks the court to reconsider the dismissal of the RICO and fraudulent misrepresentation claims, arguing that newly discovered evidence requires reconsideration of the RICO claims and that the court erred by dismissing the fraudulent misrepresentation claims. Doc. 64. The court will begin with the contention related to the fraudulent misrepresentation claim.

### A. Whether Norfolk Southern States Viable Fraudulent Misrepresentation or Concealment Claims

The court dismissed the fraudulent misrepresentation claim against the Boatright Defendants based on the finding that the claim merely duplicates the underlying breach of contract claim, and the damages flowing from the fraud are identical to the breach of contract damages. Doc. 51 at 35-36. Norfolk Southern argues that the decision is at odds with controlling precedent. Doc. 64 at 10-11.

As the court noted in its decision, "[a] mere breach of a contractual provision is not sufficient to support a charge of fraud." Doc. 51 at 31 (quoting *Brown-Marx Assocs., Ltd. v. Emigrant Sav. Bank*, 703 F.2d 1361 (11th Cir. 1983) (citing in turn *McAdory v. Jones*, 71 So. 2d 526, 528 (Ala. 1954)). However, in some circumstances, "a single transaction can support an award of damages for both breach of contract and fraud," and "fraudulent concealments after the contract was made . . . could support both a breach of contract claim and a fraud claim." *Deupree v. Butner*, 522 So. 2d 242, 244 (Ala. 1988) (citing *Herring v. Prestwood*,

5

414 So. 2d 52 (Ala. 1982)). In order to state a claim for fraudulent concealment based on a transaction also giving rise to a breach of contract claim, "the fraud claim must be based on representations [or concealments] independent from the promises in the contract and must independently satisfy the elements of fraud." *Dickinson v. Land Developers Construction Co.*, 882 So. 2d 291, 304 (Ala. 2003) (J. Houston, concurring) (citing *Deupree*, 522 So. 2d at 245). In addition, there must be "damage *due to fraud* that is separate from damages that may result from any subsequent contractual breach." *Id.* at 305 (emphasis in original, quotation omitted).

Norfolk Southern alleges that the Boatright Defendants fraudulently concealed the true nature of the ties it purchased from Boatright, and that it suffered damages of approximately $50,000,000 as a result of the fraud due to the premature degradation of the fraudulently-treated ties. Doc. 32 at 33. *See also* doc. 64-3 at 39. These are the same damages that Norfolk Southern purportedly suffered as a result of the alleged breach of contract. *See* docs. 32 at 28; 64-3 at 35. Thus, Norfolk Southern has not alleged that it incurred damages from the alleged fraud that are separate from the alleged breach of contract damages. Consequently, Norfolk Southern has not stated a viable fraudulent concealment or misrepresentation claim against the Boatright Defendants. *See Dickinson*, 882 So. 2d at 305.

6

Norfolk Southern attempts to avoid that conclusion by alleging that it would not have continued to purchase ties from Boatright or agreed to a price increase but for the concealment or misrepresentation of the true nature of the ties. Doc. 60 at 22-23. While those allegations support a fraudulent inducement claim, *see* doc. 51 at 32-33, Norfolk Southern has not shown that the court erred by finding that the allegations do not support a misrepresentation or concealment claim. Accordingly, the court declines to reconsider its order dismissing this claim against the Boatright Defendants.[3]

B.  **Whether Norfolk Southern Can State Viable RICO Claims**

RICO makes it "unlawful for any person employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such affairs through a pattern of racketeering activity . . . ." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (quoting 18 U.S.C. § 1962(c)). "To successfully allege a pattern of racketeering activity, plaintiffs must charge that:

---

[3] Watt argues that, based on the dismissal of the fraud claim against the Boatright Defendants, the fraud claim against him should also be dismissed. Doc. 52 at 7-8. Watt's argument fails for one simple reason: Norfolk Southern does not assert a breach of contract claim against Watt, or even allege the existence of a contract between it and Watt. *See* doc. 32 at 27-28. As a result, Watt's alleged misrepresentations and concealments regarding the railroad ties he inspected for Norfolk Southern are not subsumed by a breach of contract claim. Moreover, Norfolk Southern alleges that Watt represented that the railroad ties from Boatright met Norfolk Southern's standard when he knew they did not, sent falsified inspection reports to Norfolk Southern, and deliberately concealed the true nature of the ties. *See id.* at 30-31. *See also* doc. 64-3 at 10-11, 36-37. These allegations support the fraud claim against Watt.

7

(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004) (emphasis in original) (citations omitted). At issue in this case is whether Norfolk Southern's proposed revised allegations satisfy the third, or continuity, requirement for a pattern of racketeering activity and whether they adequately allege the existence of a RICO enterprise with respect to the Boatright entities.

1. The Continuity Requirement for RICO claims

The continuity requirement encompasses two distinct concepts: closed-ended continuity and open-ended continuity. *Id.* (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241-42 (1989)). "Closed-ended continuity refers to 'a closed period of repeated conduct.'" *Daedalus Capital LLC v. Vinecombe*, 625 F. App'x 973, 976 (11th Cir. 2015) (quoting *H.J. Inc.*, 492 U.S. at 241). No bright-line rule exists regarding how long a scheme must last to satisfy closed-ended continuity, but "the substantial period of time requirement for establishing closed-ended continuity cannot be met with allegations of schemes lasting less than a year." *Jackson*, 372 F.3d at 1266 (emphasis in original). In addition, a single scheme involving only one victim does not satisfy closed-ended continuity even when the scheme lasts for a substantial period of time. *Daedalus*

8

*Capital*, 625 Fed. Appx. at 976 (citing *Jackson*, 372 F.3d at 1267; *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990)). "Open-ended continuity refers to 'past conduct that by its nature projects into the future with a threat of repetition.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241). To state a RICO claim based on open-ended continuity entails pleading "either that the alleged [predicate] acts were part of the defendants' regular way of doing business, or that the illegal acts threatened repetition into the future." *Jackson*, 372 F.3d at 1267 (quoting *H.J. Inc.*, 492 U.S. at 242). The core of this inquiry is not the presence of multiple victims or schemes, but rather "whether the threat of continuity is demonstrated." *Id.* at 1265.

The court dismissed the RICO claims against the Boatright Defendants primarily because Norfolk Southern alleged a single scheme with only one possible victim and a built-in ending point. Doc. 51 at 15-27. Norfolk Southern asks the court to reconsider that decision, arguing in part that discovery has revealed evidence of other victims of Boatright's scheme. Docs. 64 at 4-6; 70. In particular, Norfolk Southern contends that emails indicating that Boatright used AFDO50 and asphalt flux (the same products Boatright used to improperly treat Norfolk Southern's ties) at a facility used to treat ties for CSX Transportation show that CSX was also a victim of the alleged "make it black" scheme. Docs. 64 at 4-5; 64-1. Additionally, Norfolk Southern offers a declaration from Gulf South

9

Forest Products as evidence that Gulf South also received improperly or fraudulently treated ties from Boatright and, therefore, was also a victim of the scheme. Docs. 64 at 5; 64-2.[4] Norfolk Southern seeks to amend its complaint to add allegations related to that newly-discovered evidence and the existence of additional victims of the "make it black" scheme. Doc. 64 at 6, 9. *See also* doc. 64-3 at ¶¶ 20-21, 24, 39, 51, 54, 56, 74-90. Based on the record now before the court and the allegations in the proposed amended complaint, Norfolk Southern can adequately plead the existence of additional victims of the alleged "make it black" scheme. These additional pleaded facts are sufficient to overcome the factual basis underpinning the court's decision related to the continuity prong of the analysis.

The Boatright Defendants argue that the court should deny the motion to reconsider, and maintain that the proposed amended complaint is futile because (1) Norfolk Southern does not allege that Watt, whom Norfolk Southern claims was necessary to the scheme's success, inspected ties for other Boatright customers, and (2) the evidence Norfolk Southern relies on contradicts its allegations regarding the scheme and proves that the alleged scheme lasted for less

---

[4] The Boatright Defendants argue that nothing connects the alleged "make it black" scheme with the decay identified by Gulf South because Gulf State's inspector did not test the preservative used on the ties and, in any event, he found advanced decay on the ties prior to the treatment of the ties. Doc. 73 at 8 (citing Doc. 64-2 at 4-5). Even if true, Norfolk Southern has still adequately alleged the existence of another purported victim of the scheme, i.e. CSX.

than a year. Doc. 73 at 4-11. However, as an initial matter, although Norfolk Southern alleges that Watt's association with the RICO enterprise was a necessary part of the scheme to defraud Norfolk Southern, it does not allege that Watt was part of the enterprise. *See* doc. 64-3 at 24-30. Moreover, a plaintiff does not need to show that each member of the alleged RICO enterprise, or each defendant associated with the enterprise, participated in all of the alleged racketeering activity in order to state a valid RICO claim. *See United States v. Cagnina*, 697 F.2d 915, 922 (11th Cir. 1983) ("Although the evidence did not show that every member of the [RICO] enterprise participated in or knew about all its activities, such evidence was not necessary to prove the existence of the enterprise."). Thus, Norfolk Southern's RICO claims do not rise or fall on whether Watt helped Boatright defraud other victims of the alleged scheme.

As for the Boatright Defendants' second contention regarding the length of the purported scheme, Norfolk Southern alleges that the Boatright Defendants improperly and fraudulently treated railroad ties that it sold to Norfolk Southern between 2009 and 2014, transmitted false or misleading billing statements and reports over interstate wire during that time period, and took elaborate steps to conceal their fraud. *See* doc. 32 at ¶¶ 16-48. Norfolk Southern seeks to amend to add allegations that Boatright enlisted Stephens Oil to procure inexpensive oil products, "such as asphalt flux and LUWA [] on Boatright's behalf" and that

11

Stephens Oil engaged another company, Avista, to formulate a cheaper oil product called AFDO-50 to "mimic the appearance of a properly-treated tie at a dramatic cost savings . . . ." Doc. 64-3 at ¶¶ 25-26. The Boatright Defendants argue that the email communications Norfolk Southern attached to its motion to reconsider show that the alleged scheme could not have begun until July 2013 and, therefore, could not have lasted more than a year because Boatright sold its treating facilities in May 2014. Doc. 73 at 5-6. Indeed, based on the record before the court, Stephens Oil contacted Avista about preparing a new oil blend in July 2013. *See* doc. 64-1. But, Norfolk Southern's allegations do not suggest that the alleged scheme started when Stephens Oil contacted or engaged Avista. *See* doc. 64-3 at ¶¶ 22-48. Rather, Norfolk Southern alleges that, prior to asking Avista to provide AFDO-50, Stephens Oil initially procured asphalt flux and LUWA directly for Boatright, *see id.* at ¶¶ 25-26, which presumably occurred prior to July 2013. Consequently, at this juncture, the email communications attached to Norfolk Southern's motion do not compel a finding that the alleged scheme lasted for less than one year.[5] Construing the allegations in the proposed amendment in the light most favorable to Norfolk Southern, the court finds that Norfolk Southern may adequately allege

---

[5] The Boatright Defendants also argue that Norfolk Southern cannot plausibly plead a pattern of predicate acts because the latest date of the allegedly fraudulent wire transmissions is August 31, 2012 and the alleged scheme did not begin until July 2013. Doc. 73 at 7. As discussed above, the email communication between Stephens Oil and Avista does not establish, at this stage in the case, that the scheme could not have started prior to July 2013.

12

closed-ended continuity by alleging the existence of multiple victims of a purported scheme which lasted for approximately five years.

The allegations of additional victims also warrant revisiting the open-ended continuity analysis. As the court noted previously, Norfolk Southern's allegations "show that the [Boatright] Defendants incorporated a pattern of mail and wire fraud into their relationship with Norfolk Southern." Doc. 51 at 15. The court concluded, however, that Norfolk Southern did not sufficiently allege open-ended continuity in large part because the Amended Complaint contained "no well-pleaded factual allegations pertaining to other fraudulent practices that could threaten other victims over the long term." *Id.* at 26. As discussed above, the proposed Second Amended Complaint adequately pleads the existence of other victims of the alleged scheme. *See* doc. 64-3 at ¶¶ 20-21, 24, 39, 51, 54, 56, 74-90. In addition, the new allegations suggest that the Boatright Defendants incorporated a pattern of fraud into their relationship with CSX, another alleged victim of the scheme. *See id.* ¶¶ 83-84. Consequently, viewed in the light most favorable to Norfolk Southern, the proposed Second Amended Complaint sufficiently pleads that the alleged predicate acts were part of the Boatright Defendants' regular way of conducting business, allowing Norfolk Southern to pursue an open-ended continuity theory. *See H.J., Inc.*, 492 U.S. at 243.

### 2. The alleged RICO enterprise

The Boatright Defendants argue alternatively that the proposed Second Amended Complaint does not allege the existence of a valid RICO enterprise with respect to the two Boatright entities. Doc. 73 at 11-13. "An enterprise 'includes an individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Williams v. Mohawk Indus.*, 465 F.3d 1277, 1284 (11th Cir. 2006) (quoting 18 U.S.C. § 1961(4)) (abrogated on other grounds by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). For purposes of RICO, "the racketeering enterprise and the defendant must be two separate entities." *Spirit Airlines*, 836 F.3d at 1355 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-62 (2001)). As such, "to state a civil RICO claim, a plaintiff must establish a distinction between the defendant 'person' and the 'enterprise' itself." *Id.* Accordingly, "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles in the corporation because a corporation necessarily acts through its agents and employees . . . ." *Id.* at 1357 (citations omitted).

In the Amended Complaint, Norfolk Southern alleged that "Boatright, Bookout, and the Boatright entities, among others, formed an association-in-fact enterprise [] as defined by 18 U.S.C. § 1961(4) . . . ." Doc. 32 at 18. In its order

dismissing the claims, the court noted Norfolk Southern's failure to allege that the corporate entities were sufficiently distinct from the alleged RICO enterprise. Doc. 51 at 27, n.5. Norfolk Southern now seeks to correct that deficiency by adding Stephens Oil to the alleged association-in-fact enterprise. Doc. 64-3 at 24. The Boatright Defendants argue that the proposed amendment is futile. Doc. 73 at 11-13.

To adequately allege an association-in-fact enterprise, a plaintiff must plead facts showing that the members of the enterprise share a common purpose. *Spirit Airlines*, 836 F.3d at 1352 (citing *Boyle v. United States*, 556 U.S. 938, (2009)). In that regard, Norfolk Southern's proposed Second Amended Complaint includes allegations that Stephens Oil procured inexpensive petroleum products on behalf of Boatright to further the "make it black" scheme and that Stephens Oil engaged Avista to formulate a new, less expensive chemical called AFDO-50 for Boatright that would mimic the appearance of properly treated ties. Doc. 64-3 at 7-8. Norfolk Southern further alleges that Stephens Oil arranged for Avista to ship AFDO50 and "other asphalt-flux products that have no legitimate use in rail tie treatment" to Boatright's facilities. *Id.* at 8, 16. Importantly, however, Norfolk Southern does not allege that Stephens Oil knew what Boatright used the products at its facilities for, or, if it did, that Stephens Oil knew that use of the products was contrary to Norfolk Southern's specifications, or knew about Boatright's alleged

15

misrepresentations to Norfolk Southern. *See id.* Norfolk Southern has also not pleaded that Stephens Oil directly profited from Boatright's misrepresentations, instead of simply receiving its normal fee for the products it shipped to Boatright. *See id.* As pleaded, Stephens Oil's alleged behavior suggests innocent activity done in the ordinary course of business and in pursuit of its own economic interest.[6] Put simply, Norfolk Southern's proposed allegations, and the email communications attached to Norfolk Southern's motion, are not sufficient to give rise to a plausible inference that Stephens Oil actually knew about the "make it black" scheme, knew how Boatright used the AFDO 50 and other products it procured for Boatright, or that it worked knowingly to further Boatright's scheme. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1071 (11th Cir. 2017) ("On a Rule 12(b)(6) motion to dismiss, the Court does not accept as true unwarranted deductions of fact.") (citation omitted). In the absence of allegations that Stephens Oil shared Boatright's purpose of furthering the alleged "make it black" scheme, the proposed Second Amended Complaint does not plausibly allege a valid RICO enterprise with respect to the two Boatright entities. *See Spirit Airlines*, 836 F.3d at 1353-55 (finding that the plaintiffs failed to adequately allege an association-in-fact RICO enterprise due to their failure to allege facts that give rise to a plausible

---

[6] "[C]ourts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)).

inference that Spirit Airlines' technology vendors knowingly cooperated with Spirit in the alleged fraudulent scheme and that the alleged enterprise shared a common purpose). *See also Am. Dental Ass'n*, 605 F.3d at 1294 (finding that the plaintiffs failed to allege plausible RICO claims in part because "they merely offered conclusory allegations of agreement accompanied by statements of parallel behavior, which just as easily suggest independent, lawful action"). Accordingly, in light of the failure to adequately allege that the corporate defendants are sufficiently distinct from the alleged RICO enterprise, *see Spirit Airlines*, 836 F.3d at 1357; doc. 51 at 27, n.5, the proposed amendment is futile with respect to the RICO claims against the two Boatright entities, and the motion to reconsider is due to be denied as to these two entities, *see Almanza*, 851 F.3d at 1074-75.

A different analysis applies to the question whether Norfolk Southern alleges a valid RICO enterprise with respect to individual defendants Boatright and Bookout. "When an individual defendant acts through a corporation, he may have formed an association-in-fact with an entity distinct from himself." *Spirit Airlines*, 836 F.3d at 1357. Indeed, "[l]inguistically speaking, an employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids any 'person' unlawfully to conduct an 'enterprise,' particularly when the statute explicitly . . . defines 'enterprise' to include a 'corporation.'" *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (quoting 18 U.S.C.

§§ 1961(3), (4)). As such, a plaintiff may assert RICO claims against a corporate officer who "unlawfully conducts the affairs of the corporation . . . [,] whether he conducts those affairs within the scope, or beyond the scope, of corporate authority." *Id.* at 166. Therefore, because Boatright and Bookout are distinct from the corporate defendants, and the proposed Second Amended Complaint adequately pleads RICO's continuity requirements, *see* pp. 8-13, *supra*, Norfolk Southern has pleaded cognizable RICO claims against Boatright and Bookout individually.

    C.    **Whether Norfolk Southern Can State Viable Claims Against Stephens Oil**

Finally, Norfolk Southern asks to amend to add RICO, fraud, and civil conspiracy claims against Stephens Oil. *See* docs. 64 at 5, n.2; 64-3; 75 at 4. Norfolk Southern contends that because Stephens Oil served as the conduit for Boatright to purchase LUWA, asphalt flux, and AFDO50, Stephens Oil was part of the RICO enterprise. Docs. 64 at 5, n.2; 75 at 4. As discussed above, however, the proposed Second Amended Complaint does not allege sufficient facts to give rise to a plausible inference that Stephens Oil knew how Boatright used the products it delivered to Boatright's facilities, or had actual knowledge of the "make it black" scheme. *See* pp. 15-17, *supra*; doc. 64-3 at 7-9, 16, 20, 24-33. Thus, Norfolk Southern does not plead facts that plausibly show that Stephens Oil knowingly participated in the alleged scheme. Moreover, the proposed amendment does not

18

allege facts suggesting that Stephens Oil engaged in any behavior that qualifies as wire fraud. *See* doc. 64-3; 18 U.S.C. § 1343 (fraud by wire, radio, or television). Consequently, the proposed allegations do not give rise to a plausible inference that Stephens Oil participated in any of the predicate acts of racketeering activity that are necessary to assert a valid RICO claim against Stephens Oil. *See* 18 U.S.C. § 1961(a) (defining racketeering activity); *BellSouth Telecommunications*, 372 F.3d at 1264.

Additionally, as to the fraud and civil conspiracy claims, Norfolk Southern concedes in the proposed amendment that it had no communications with Stephens Oil, *see* doc. 64-3 at 16, and it does not allege that Stephens Oil misrepresented or concealed any material fact, *see id.* at 35-41. Therefore, the proposed amendment does not assert a viable fraud or civil conspiracy claim against Stephens Oil. *See Aliant Bank, a Division of USAmeribank v. Four Star Investments, Inc.*, 244 So. 3d 896, 928 (Ala. 2017) (listing the elements of fraudulent misrepresentation); *Flying J. Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1192 (Ala. 2008) (listing the elements of fraudulent suppression); *Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 430 (Ala. 2006) ("A civil conspiracy cannot exist in the absence of an underlying tort."). As a result, Norfolk Southern's motion to amend to add Stephens Oil as a defendant in this action is futile and is due to be denied. *See Maynard*, 342 F.3d at 1287 ("Although leave to amend shall be freely given when

justice so requires, a motion to amend may be denied on numerous grounds, such as . . . futility of the amendment.") (quotation and alteration in original omitted).

## IV. CONCLUSION AND ORDER

For all of these reasons, Norfolk Southern's Motion for Reconsideration and Leave to Amend, doc. 63, is **GRANTED** as to the RICO claims against Rush Shane Boatright and John Steven Bookout, and Norfolk Southern may file a Second Amended Complaint to replead its RICO claims against these two defendants. In all other respects, the motion is **DENIED**. In light of the forthcoming Second Amended Complaint, Watt's Motion for Judgment on the Pleadings, doc. 52, and his motion to strike, doc. 66, are **DENIED** as **MOOT**.

**DONE** the 14th day of March, 2019.

                                        */s/ Abdul Kallon*
                                  **ABDUL K. KALLON**
                              UNITED STATES DISTRICT JUDGE